O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DEBTOR: EMPIRE LAND, LLC, et al. <br> RICHARD K. DIAMOND, CHAPTER 7 TRUSTEE, <br><br> Plaintiff, <br><br> v. <br><br> EMPIRE PARTNERS, INC., a California corporation, <br><br> Defendants. | Case No. EDCV 16-00831 DDP <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE INTERLOCUTORY APPEAL** |

Presently before the court is Defendant Empire Partners, Inc. ("Empire")'s "Motion for Leave to Appeal the Bankruptcy Court's Interlocutory Order Denying Summary Judgment." (Dkt. 6.) Having considered the submissions of the parties, the court denies the motion and adopts the following Order.

**I. Background**

The Plaintiff/Trustee's underlying complaint in the Bankruptcy Court seeks to invalidate dozens of preferential and fraudulent transfers made by Empire and associated entities. Empire filed a

motion for summary judgment, arguing, as relevant here, that Plaintiff had not presented sufficient evidence of Empire's insolvency or fraudulent intent.[1] With respect to the former, Empire contended that the only evidence of insolvency was contained in an expert report by William Haegele (the "Haegele Report") that was not based upon reliable scientific principles or methods, and was therefore inadmissible. With respect to fraudulent intent, Empire objected that the evidence put forth by Plaintiff was inadmissible hearsay.

Notwithstanding Empire's objections, the Bankruptcy Court considered the Haegele Report and denied Empire's motion for summary judgment, finding that the Haegele Report created a triable issue of fact with respect to Empire's insolvency at the time of the allegedly fraudulent transactions. (Motion, Ex. 2 at 17-18.) The Bankruptcy Court also considered, over Empire's hearsay objections, e-mails and memos between Larry Day, one of Empire's officers and Ken Orgen, an accountant, to conclude that Plaintiff produced sufficient evidence "with respect to the badges of fraud" to create a triable issue of fact regarding Empire's fraudulent intent.

Empire now seeks leave of this Court to file an interlocutory appeal the bankruptcy court's summary judgment order and rulings regarding the admissibility of the Haegele Report and the Lay-Ogren documents.

**II. Legal Standard**

---

[1] The parties agree that insolvency is an essential element of Plaintiff's preference and constructive fraudulent transfer claims. The parties also appear to agree that insolvency is not necessary to Plaintiff's intentional fraudulent transfer claims.

2

A district court may grant leave to appeal an interlocutory order of a bankruptcy judge. 28 U.S.C. § 158(a)(3). In determining whether to grant leave, district courts generally apply the same standard that governs interlocutory appeals of civil matters. In re Ahern Rentals, Inc., No. 12-CV-0676-LRH, 2013 WL 150489 at *3 (D. Nev. Jan. 14, 2013). Pursuant to 28 U.S.C. § 1292(b), districts look to (1) whether a controlling issue of law is involved, (2) whether there is a "substantial ground for difference of opinion," and (3) whether an immediate appeal will materially advance the termination of the litigation. 28 U.S.C. § 1292(b). Even where all of these elements are met, district courts retain discretion to deny permission for interlocutory appeal. Tsyn v. Wells Fargo Advisors, LLC, No. 14-cv-02552-LB, 2016 WL 1718139 at *3 (N.D. Cal. Apr. 29, 2016).

Although a question may be controlling so long as resolution of the issue could materially affect the outcome of litigation, Section 1929(b) typically will not apply to cases that turn "on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2009 WL 4050966, at *2 (N.D. Cal. Nov. 20, 2009) (quoting McFarlin v. Conseco Services, LLC, 381 F.3d 1251, 1259 (11th Cir. 2004). "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented. Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010)

3

(internal quotation marks and citation omitted). "[J]ust because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." Id. The party seeking leave bears the burden "of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Fukuda v. Los Angeles County, 630 F. Supp. 228, 229 (C.D. Cal. 1986) (internal quotation and citation omitted).

**III. Discussion**

A. The Haegele Report

The question presented with respect to the Haegele Report, as Empire frames it, is "[o]n a motion for summary judgment, where the . . . only evidence of one of the essential elements is an expert report to which the nonmoving party objects on the grounds that it is not reliable, is it error for a bankruptcy court to . . . deny[] summary judgment without the court making a Daubert determination with respect to the reliability of the purported expert's methodology?" (Mot. At 9:25-10:5.) So phrased, the question whether the issue is controlling is bound up with the question whether there is a substantial ground for difference of opinion. The answer is no.

To qualify as a controlling question of law for purposes of interlocutory appeal, the issue "must be stated at a high enough level of abstraction to lift the question out of the details of the evidence of facts of a particular case and give it general relevance to other cases in the same area of law." Sateriale v. RJ Reynolds Tobacco Co., No. 2:09-CV-08394-CAS, 2015 WL 3767424, at *2

4

(C.D. Cal. June 17, 2015) (internal quotations and citations omitted); see also McFarlin, 381 F.3d at 1259. Here, Empire seeks to lift the issue out of the details of this particular case by suggesting that the bankruptcy court held that an expert opinion could defeat summary judgment even if that opinion did not meet the Daubert test for admissibility.

Under Federal Rule of Evidence 702, trial courts have a gatekeeping function regarding expert testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 n.7 (1993). Where "scientific, technical, or other specialized knowledge will assist the trier of fact" to understand evidentiary or factual issues, an expert witness who is qualified by "knowledge, skill, experience, training, or education" may "testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. In addition, Rule 702 requires that:

> 1) the testimony is "based upon sufficient facts or data";
> 2) the testimony is the "product of reliable principles and methods"; and
> 3) the witness has "applied the principles and methods reliably to the facts of the case."

Fed. R. Evid. 702. Courts must evaluate expert scientific testimony for both relevance and reliability. The proponent of the expert testimony has the burden of establishing that the relevant admissibility requirements are met by a "preponderance of the evidence." Daubert, 509 U.S. at 592 n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)). Courts employ a flexible inquiry tied to the facts of the particular case to make determinations regarding the reliability of expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). The

focus should be "solely on principles and methodology, not on the conclusions they generate." Daubert, 509 U.S. at 595; see also Fed. R. Evid. 702 Adv. Comm. Note to 2000 Amdt. An expert's experience alone can provide a sufficient foundation for expert testimony, so long as the witness explains "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee Note to 2000 Amdt.

Empire bases its characterization of the bankruptcy court's holding almost entirely upon footnote 15 to the 31-page memorandum decision. Footnote 15, appended to the bankruptcy court's discussion of the Haegele Report, states, "The Court is not making any findings regarding the methodology used by Haegele (whether to consider the actual sale price of Anaverde); only that Plaintiff has presented sufficient evidence to create an issue for trial." (Mot., Ex. 2 at 18:24.) Although that sentence, viewed in isolation, might arguably support Empire's argument, such a narrow reading mischaracterizes the bankruptcy court's position.

Nowhere in the bankruptcy court's decision is there any suggestion that a Daubert analysis is unnecessary or that a party presenting expert opinion need not satisfy Daubert or Rule 702. Indeed, an examination of the transcript of oral argument proceedings reveals that the bankruptcy court devoted substantial attention to Daubert issues. The court engaged in an extensive colloquy with counsel, spanning approximately thirty transcript pages, regarding the admissibility of the Haegele Report. (Plaintiff's Request for Judicial Notice, Ex. 20 at RJN 4003-4034.) During that exchange, the court acknowledged its role as gatekeeper

for scientific evidence and responsibility for determining whether the Haegele Report met the standard for admissibility. (RJN Ex. 20 at RJN 4010). Indeed, the court explicitly stated that the issue with respect to the Haegele Report was whether "it is so flawed as to be unreliable that it shouldn't suffice as evidence." (Id. at RJN 4013:21-23.)

In response to that question, Plaintiff's counsel argued, in part, that the "developer's approach" methodology employed by Mr. Haegele was sound, as evinced by the fact that the methodology had been accepted in another bankruptcy case and had only been rejected in distinguishable eminent domain cases. Id. at RJN 4018, 4023-24. The bankruptcy court stated, "I am ultimately agreeing with [Plaintiff]. . . . [N]othing that's been shown to me, either in oral argument or in the record, shows me that the methodology was problematic to the extent that . . . I would not take the [Haegele Reort] in to establish an issue of fact." Id. at 4018.

The Daubert colloquy did not end there. Empire's counsel argued each of the Rule 702 factors in turn, and the bankruptcy court explicitly stated that the first two factors, relevance and sufficiency of the data, were met. Id. at 4019. With respect to the reliability of the Haegele Report's principles and methods, the bankruptcy court opined that that was "not one of [Empire's] stronger arguments" before explaining that the court was not convinced that Empire's "lawyer's presentation of why the numbers are wrong . . . is enough for me to find that the report is not something I can rely on as creating an issue of fact. . . . [T]he only thing I'm looking at is [whether] the methodology was . . . done erroneously." Id. at 4019:24-25; 4027:13-17; 4029:2-4.

7

In the context of this extensive discussion at argument, it is clear that the bankruptcy court's statement in footnote 15 to the written decision denying summary judgment, stating that "[t]he Court is not making any findings regarding the methodology used by Haegele" was not, as Empire suggests, a pronouncement that the Daubert analysis is irrelevant or unnecessary. Rather, footnote 15 is a restatement of the bankruptcy court's explanation at oral argument that "[a]t trial, [Empire] may very well be able to tear [Mr. Haegele] apart, and I'm not . . . suggesting otherwise right now, but here . . . the issue is is [the Haegele Report] so flawed as to be unreliable that it shouldn't suffice as evidence." Id. at 4013:15-23.

In sum, here there is no abstract, high level question whether a court may deny summary judgment based solely upon expert testimony that has not passed Daubert muster, let alone a question whether there is a substantial ground for difference of opinion, because the bankruptcy court never took that position. The bankruptcy court's reiteration in footnote 15 that admissibility determinations have no bearing on credibility determinations at trial cannot be fairly read as a refusal to conduct a Daubert analysis. The court engaged in a lengthy discussion with counsel regarding Empire's Daubert objections, and overruled them. Although Empire may disagree with the bankruptcy court's evidentiary rulings, such determinations do not constitute controlling questions of law on a disputed legal issue that would merit the exceptional relief of an interlocutory appeal.

B. Empire's Hearsay Objections

The bankruptcy court determined that "a series of e-mails" between one of Empire's officers, Larry Day, and tax accountant Ken Ogren, as well as a memorandum by Ogren, "provided in connection with the depositions of Ken Ogren and Larry Day[,]" were sufficient to create a triable issue of fact regarding Empire's fraudulent intent. (Mot., Ex. 2 at 10.) Here, Empire argues that this evidence, as well as other business records, including checks, bank deposits, and journal or ledger entries, which were attached as exhibits to a declaration from Plaintiff's counsel, are hearsay improperly unauthenticated by counsel and are, therefore, inadmissible.[2] (Motion at 9, 19.)

As with the Haegele Report, discussed above, Empire attempts to present this hearsay issue as something more than a disagreement with the bankruptcy court's evidentiary rulings. Empire frames the question presented here as whether "it is error for a bankruptcy court to admit unauthenticated evidence . . . or [whether] it is sufficient for . . . counsel to attach unauthenticated documents to his own declaration and promise to authenticate the evidence at trial?" (Mot. at 9. See also Reply at 7:15-19 ("[T]he question here is broad: that is, whether a Bankruptcy Court can deny summary judgment based on unauthenticated and inadmissible documents. That question not only controls this case, it is of critical importance in many others. The Trustee[, and by extension, the bankruptcy

---

[2] It is somewhat unclear whether all of this evidence is contained within the e-mails and memorandum to which the bankruptcy court referred. See Reply at 10 ("[T]he documents attached to the declaration of the Trustee's counsel were the only things cited by the Bankruptcy Court . . . as evidence of intentional fraud . . . .").

9

court,] argues that he does not need to provide admissible evidence to defeat summary judgment. EPI contends that he does.").

As with the Haegele Report, Empire's characterization of the bankruptcy court's decision sets up a straw man, the analysis of which necessarily combines the "controlling question of law" and "substantial ground for difference of opinion" factors of the interlocutory appeal inquiry. Nowhere in its written decision or at oral argument does the bankruptcy court suggest that, as a general legal principle, unauthenticated hearsay evidence is admissible or that inadmissible evidence can defeat a motion for summary judgment. Empire cannot, therefore, possibly demonstrate the existence of a substantial ground for disagreement, let alone one that implicates a circuit split or a difficult issue of first impression. See Couch, 611 F.3d at 633 (9th Cir. 2010). To the extent the bankruptcy court may have erred in its determination that the records upon which it based its fraudulent intent finding were properly authenticated and admissible, either because they are not hearsay or are subject to some exception, such potential error presents no more than a question whether the "court properly applied settled law to the facts of evidence of a particular case."[3] Harris 2009 WL 4050966 at *2. Such questions are generally ill-suited to interlocutory review. Id.

---

[3] Contrary to Empire's suggestion, the bankruptcy court did not state that the Trustee's counsel's declaration was alone sufficient to authenticate the Day-Ogren e-mails or the memorandum. The bankruptcy court's written decision emphasizes that the documents were "provided in connection with the depositions of Ken Ogren and Larry Day." (Mot., Ex. 2 at 10:8.) To the extent Empire contends that that provenance presents other, distinct admissibility concerns, those issues also present no more than a question regarding the proper application of well-settled law.

Furthermore, even if Empire had successfully shown that a highly abstract, controlling issue of law is involved, and that a substantial ground for disagreement exists, it has failed to meet its burden to show that an immediate appeal will materially advance the termination of this litigation.  Even if the bankruptcy court did err in finding certain evidence properly authenticated by counsel's declaration, Plaintiff represents that at least some of that evidence of fraudulent intent, including general ledgers and bank records, was provided by Empire as part of the discovery process, proffered by Empire itself in connection with its summary judgment, or referenced in Empire's interrogatory responses.[4]  (Opposition at 22-23.)  Thus, even if the bankruptcy court had stated and followed some novel and erroneous legal principle, it appears that certain evidence of fraudulent intent could have been admitted on alternative grounds, and that resolution of the question presented by Empire in Empire's favor would not necessarily result in a grant of Empire's summary judgment motion.

As with the Haegele Report, Empire's motion for interlocutory appeal of the bankruptcy court's admission of certain business records clothes a straightforward disagreement with the bankruptcy court's evidentiary rulings in the guise of a sweeping,

---

[4] To the extent Empire argues in reply that Plaintiff does not explain why exclusion of the business records would have no effect on the litigation, the court disagrees.  (Reply at 10:7-9.)  Although it is somewhat unclear whether the universe of evidence to which Plaintiff refers overlaps completely with the evidence cited in the bankruptcy court's written order, Plaintiff also explains potential alternative grounds for admissibility of the evidence that Empire claims the bankruptcy court improperly admitted and relied upon.  It remains, of course, Empire's burden to demonstrate that interlocutory appeal will materially advance the termination of the litigation.  28 U.S.C. § 1292(b).

controversial statement of law that the bankruptcy court simply never made. Even if the bankruptcy court had adopted such a position, Empire has failed to demonstrate that interlocutory review of that error would necessarily result in a grant of summary judgment in Empire's favor or otherwise materially advance the termination of these proceedings. Accordingly, leave to file an interlocutory appeal of the bankruptcy court's order denying Empire's motion for summary judgment is not warranted.

**IV. Conclusion**

For the reasons stated above, Empire's Motion for Leave to Appeal is DENIED.

IT IS SO ORDERED.

Dated: December 15, 2017

DEAN D. PREGERSON
United States District Judge